# EXHIBIT A


ENGS
commercial finance

## COMMERCIAL FINANCE AGREEMENT

| "CREDITOR": ENGS COMMERCIAL FINANCE CO. | CONTRACT#: 54818 |
|---|---|
| ♦ 2441 Warrenville Road, Suite 310 Lisle, Illinois 60532 ♦ Telephone: (800) 680-3002  ♦ Fax: (800) 680-3002 | Contract Date: 01/28/2015 |

| "BUYER": | "DEALER": |
|---|---|
| DAVID DARNELL BRITT d/b/a BRITT PRO<br>506 COLGATE DR<br>ALLEN, TX 75013<br>(469) 675-3368<br>PHBRITT@COMCAST.NET<br>PANDORA HENDERSON BRITT d/b/a BRITT PRO<br>506 COLGATE DR<br>ALLEN, TX 75013<br>(469) 261-4114<br>PHBRITT@COMCAST.COM | TEXAS KENWORTH, INC. dba MHC KENWORTH<br>Contact: SARAH PAYNE<br>34661 LBJ FREEWAY<br>DALLAS, TX 75241<br>(972) 225-3600 |

Vehicle/Equipment Description (include Quantity, Year, Make, Model and Serial No. and/or VIN No.) together with any accessories or attachments described below and/or listed on an attached Schedule or Invoice (hereinafter referred to as "Collateral"):

| Quantity | Collateral Description | Serial #/VIN |
|---|---|---|
| 1 | 2013 PETERBILT 366 SLEEPER TRACTOR  (Used) | 1XPHD49XXDD156042 |

Collateral Location (if different than above): Same as primary customer location above

| PAYMENT SCHEDULE<br>NUMBER & AMOUNT OF INSTALLMENT PAYMENTS ("Term") | 54 MONTH TERM<br>54 @ $1,885.74 |
|---|---|

### ITEMIZATION OF PURCHASE PRICE

| SALE PRICE (combined price of each unit as itemized on Your Invoice(s) submitted for financing, including: F.E.T, Sales Tax, any cost for accessories, attachments, fees, license, title or registration fees, premiums, protection plans or service contracts, services and/or additional charges reflected below): | | $90,855.95 |
|---|---|---|
| **DOWN PAYMENT** | | |
| TOTAL NET TRADE-IN: 2006 ISUZU NPR VIN# JALB4B16367008927 | $11,000.00 | |
| CASH DOWN PAYMENT (paid to Dealer): | $7,171.19 | |
| CASH DOWN PAYMENT (paid to ENGS -- Check payable to Engs Commercial Finance Co. Please note that any payment in excess of $5,000.00 must be made via cashier's check or wire.): | $0.00 | |
| TOTAL DOWN PAYMENT (due at the time of execution): | | $18,171.19 |
| **ADDITIONAL FEES, CHARGES, TAXES, AND PREMIUMS INCLUDED IN THE AMOUNT FINANCED:** | | |
| DOCUMENTATION FEE  FINANCED: | $595.00 | |
| EXTENDED START (provides 45 or more days before next payment date): | $931.38 | |
| GAP COVERAGE FINANCED: | $0.00 | |
| INSURANCE PREMIUM-Physical Damage FINANCED: | $0.00 | |
| LIFE/DISABILITY FINANCED: | $0.00 | |
| MISC. FEES:  Financed Documentation Fee | $0.00 | |
| SALES TAX/DMV FEES FINANCE (OUT OF STATE TRANSACTION) | $0.00 | |
| TOTAL OTHER ITEMS FINANCED: | $1,526.38 | |
| **TOTAL AMOUNT FINANCED:** | | $74,211.14 |
| MONTHLY INVOICE FEE  (waived only for electronic payment): | $10.00 | |
| **ADDITIONAL FEES, CHARGES, TAXES DUE AT SIGNING** | | |
| DOCUMENTATION FEE UPFRONT: | $0.00 | |
| 0    ADVANCE PAYMENT(S): | $0.00 | |
| **TOTAL DUE AT SIGNING:** | | $0.00 |
| **INVOICE DUE DATE AND INSTALLMENT PAYMENT AMOUNT** | | |
| INVOICE DUE DATE (NEXT): 03/15/2015 | AMOUNT DUE ON YOUR INVOICE: | $1,885.74 |

### TERMS AND CONDITIONS

The use of the word "You," "Your" and "Your Company" in this Commercial Finance Agreement, in any Amendment(s), Exhibit(s), Schedule(s) and/or other attachments (collectively, this "CFA") refers to each of the Buyers and Co-Buyers, if any.  If more than one Buyer is named in this CFA, the liability of each Buyer shall be joint and several.  "We," "Us" and "Our" refers to Creditor and its successors and assigns.

38460 \ 54818 (01/28/2015-74211.14)
CFA – Rev 03-14

Page 1 of 4

1. **NO WARRANTIES:** YOU ARE FINANCING THE COLLATERAL "AS IS" AND WITH ALL FAULTS. WE DO NOT MAKE ANY WARRANTY OR REPRESENTATION WHATSOEVER WITH RESPECT TO THE COLLATERAL, INCLUDING, WITHOUT LIMITATION AS TO THE DURABILITY, QUALITY, CONDITION OR SUITABLY OF THE COLLATERAL FOR YOUR PURPOSES. WE SHALL NOT BE LIABLE TO YOU FOR ANY LOSS, DAMAGE OR EXPENSE OF ANY KIND CAUSED DIRECTLY OR INDIRECTLY BY THE COLLATERAL OR ITS USE, OPERATION, OR POSSESSION, OR BY ANY DAMAGE WHATSOEVER AND HOWEVER CAUSED. IF THE COLLATERAL DOES NOT OPERATE AS REPRESENTED OR WARRANTED BY THE DEALER OR MANUFACTURER, OR IS UNSATISFACTORY FOR ANY REASON, REGARDLESS OF CAUSE OR CONSEQUENCE, YOUR ONLY REMEDY, IF ANY, SHALL BE AGAINST THE DEALER OR MANUFACTURER OF THE COLLATERAL AND NOT AGAINST US. NO DEFECT, DAMAGE OR UNFITNESS OF THE COLLATERAL FOR ANY PURPOSE SHALL RELIEVE YOUR OBLIGATION TO MAKE PAYMENTS OR RELIEVE YOU OF ANY OBLIGATION UNDER THIS CFA. WHERE PERMITTED, WE ASSIGN ALL MANUFACTURER'S AND DEALER'S WARRANTIES TO YOU.

2. **Acceptance:** You agree to finance the Collateral, together with all affixed parts, attachments and accessories pursuant to the Payment Schedule and Itemization of Purchase Price sections reflected above and subject to the terms of this CFA. You are solely responsible for the selection of the Collateral, Dealer, and/or manufacturer. At Your request and instructions, We are paying the Dealer for the Collateral as specified in the above Itemization of Purchase Price section. If You fail to accept delivery of any Collateral for any reason, You agree to indemnify and hold Us harmless and to defend Us against any claim of liability by Dealer. We shall have no obligations hereunder until We accept this CFA at Our offices by paying Dealer the Amount Financed for the Collateral. An original, photocopy or facsimile of this CFA, whether received in whole or piecemeal, will be legally admissible under the "best evidence rule." A signed copy of this CFA, any Amendment(s), Exhibit(s) Schedule(s) and/or any related document sent by facsimile shall be treated as an original document and shall be admissible as evidence, and all signatures shall be binding as if manual signatures were personally delivered. This CFA may be executed in counterparts, each of which when so executed shall be deemed to be an original and all of which when taken together shall constitute one and the same agreement.

3. **Security Interest:** You hereby grant to Us a first priority and perfected security interest under the Uniform Commercial Code ("UCC") in the Collateral referenced above whether used as equipment or inventory and all accessions and additions thereto and replacements thereof and any receivables, rebates, discounts, credits, payments, refunds, proceeds, all accounts, general intangibles, contract rights, instruments and chattel paper representing proceeds and products relating to the foregoing Collateral. Such security interest is granted to secure payment and performance by You of Your obligations hereunder. You further grant to Us a security interest in the Collateral (separate and distinct from and subordinate only to the security interest granted to Us above) to secure the payment and performance of all now existing or hereafter arising debts, liabilities and obligations of Yours of every kind and character, whether direct, indirect, absolute, contingent, primary, secondary, or otherwise to Us, whether under this CFA or any other CFA, and whether due directly or acquired by assignment, transfer, renewal, extension, refinancing or other means ("Liabilities").

4. **Security Deposit:** You may be required to deposit with Us a Security Deposit as security for the prompt and full payment and the timely performance of all provisions of this CFA, and any extensions or renewals thereof. If required, the security amount is set forth above in the Itemization of Purchase Price ("Security Deposit"). In the event of any default by You under this CFA, We shall have the right, but shall not be obligated, to apply said Security Deposit to cure such default. Within 15 days after We give notice to You that We have applied any portion of the Security Deposit to cure any default, You shall restore said Security Deposit to the full amount set forth above. On the expiration or earlier termination of this CFA, or any extension or renewal thereof, provided You have paid all of the Installment Payments, taxes, fees or charges herein and fully performed all other provisions of this CFA, We will return to You any then remaining balance of the Security Deposit, without interest. Said Security Deposit may be commingled with Our other funds unless required by state statutes or regulatory requirements. In the event of cancellation, the Security Deposit will be refunded, less a $250.00 administrative fee.

5. **Payments, Prepayment:** This Commencement Date of this CFA shall be the earlier of (i) delivery of the Equipment to You, (ii) the Contract Date of this CFA, or (iii) upon Our Acceptance of this CFA. The Extended Start is an amount equal to 1/30th of the monthly Installment Payment multiplied by the Extended Start of 15 days (actual between 15 and 31 days). All Installment Payments are payable in advance of the Invoice Due Date (unless modified above or set forth in a subsequently Invoice) and continues on the same day of each subsequent month for the consecutive number of payments reflected above. Advance Payment(s) will be applied to the first payment due, and if more than one (1) Advance Payment, then to the last payment(s) due under the Term. Your receipt of an invoice is not a condition of Your obligation to make Your Installment Payment or other charges when due. We reserve the right to adjust Your Installment Payment or Itemization of Purchase Price reflected above, by up to 10% to reflect changes in the Dealer's final invoice. Any such adjustment shall be reflected on a subsequent invoice to be sent to You within 30 days. Upon termination of any insurance policy(ies) financed, any premium, rebate or refund will be applied to Your account, at Our option: (i) toward outstanding charges, (ii) future installments, or (iii) by adjusting Your remaining Installment Payments to reflect such rebate. However, You will remain obligated to pay any deficiency charges relating to such policy(ies) after rebate or refund is applied. You may prepay Your obligations under this CFA in whole but not in part at any time upon prior written notice to Us by paying Us, in cash, the unpaid principal balance plus $250 plus 1% of the unpaid principal balance for each 12-month term remaining on the CFA ("Prepayment"). A partial 12-month term remaining shall be deemed a full term remaining for purposes of calculating the early term pay-off amount.

6. **Use and Location:** You certify to Us that the Collateral will be used solely for commercial and business purposes and not for personal or household purposes. You shall NOT use the Collateral to haul or transport any hazardous materials or products. The Collateral will be and shall remain personal property and, at Your expense, You shall keep the Collateral free from any and all liens and encumbrances other than that of Creditor. You shall give Us immediate notice of any attachment or other judicial process, liens or encumbrances affecting the Collateral. You may not move the Collateral from the Location stated above or alter the Collateral in any manner without Our prior written consent.

7. **Maintenance, Installation:** You are responsible for installing and keeping the Collateral in good working order and You shall pay all costs relating to its use and operation. You shall not make any alterations, additions or improvements to the Collateral without Our prior written consent. All additions and improvements made to the Collateral shall be deemed accessions thereto, and shall not be removed if removal would impair the Collateral's economic value or functional utility.

8. **Insurance; Indemnification:** You agree at all times to: (1) insure the Collateral against risk of loss in an amount not less than the Amount Financed reflected above, (ii) maintain general public liability insurance in amount(s) that is specified in Our Insurance Request Form, and (iii) name Us on the forgoing policy(ies) as Loss Payee and (iv) maintain such coverage from an insurance carrier acceptable to Us. You agree to provide Us with certificates or other evidence of insurance acceptable to Us, before the Term begins, and during the Term. If at any time You fail to keep the Equipment properly insured in accordance with Our requirements or to deliver to Us a valid certificate of insurance reflecting such insurance as being in effect, it will be deemed as a material default hereunder. Then, We will, in addition to the other remedies available to Us hereunder, have the right, but no obligation, to obtain such insurance for the Term at Your expense and if so obtained, We will add to Your Installment Payments due hereunder and You will pay to Us Our costs of obtaining such insurance and any customary fees or charges of Ours or Our designees associated with such insurance. Regardless of the existence of any applicable insurance, You agree to indemnify and hold Us, Our employees and affiliates harmless from all suits, claims, demands, losses and liabilities arising out of damage to or the use or operation of the Collateral (including reasonable attorneys' fees incurred by Us in connection with any such suit, claim, demand, loss or liability). If You fail to keep the Collateral properly insured, then, in addition to the other remedies available hereunder, You agree to pay an administrative fee equal to 10% of Your Installment Payment for each 30 day period during the Term the Collateral is uninsured or remains improperly insured.

9. **Taxes and Fees:** You agree to pay when due or reimburse Us for all taxes, fees, fines, penalties and internal administrative costs relating to use or ownership of the Collateral or to this CFA, including but not limited to documentary stamp taxes, now or hereafter imposed, levied or assessed by any federal, state or local government or agency. If any federal, state, county or local government or agency requires any taxes, charges or fees to be paid in advance, and We pay such taxes, charges or fees, We reserve the right to adjust the remaining payments, so that We may recover any payment of such taxes, charges or fees. Any such adjustment shall be reflected on Your subsequent invoice(s). You agree to comply with all registration, licensing, tax and title laws applicable to this Collateral and will be responsible for any fees or penalties for failure to do so on a timely basis.

10. **Titled Equipment:** Any Collateral that is subject to title registration laws shall be titled and registered as directed by Us within 10 days of Your receipt of the Collateral. Failure to do so will be deemed an event of default. In addition, You agree to pay an administrative fee equal to 10% of Your Payment for each additional 30-day period during that the Collateral remains unregistered or improperly titled or registered.

11. **Default; Remedies:** If You or any Guarantor does not pay when due or if You or any Guarantor breaches or fails to perform any other covenants and promises under this CFA or any other agreement entered into by You and/or Guarantor and held or serviced by Us or upon the death of You or any Guarantor (or if the Buyer is a corporation, then the death of any majority owner or officer of Buyer) or the failure to pay indebtedness as due with other lenders or the renting or leasing of the Collateral or the operation of the Collateral by anyone other than Buyer or if You or any Guarantor declares bankruptcy or insolvency or if You transfer, change or terminate Your entity existence or take any actions regarding the cessation or winding up of Your business affairs or any representation or warranty made by You herein or in any document or certificate furnished by You to Us either directly or indirectly was incorrect in any material respect when made, You tamper, disable or remove the tracking device installed in the Equipment, You will be in default. If You are in default, at Our election, We can accelerate and require that You pay, as reasonable liquidated damages for loss of bargain, the "Accelerated Balance." The Accelerated Balance will be equal to the total of (i) accrued and unpaid amounts then due and owing, and (ii) the sum of the remaining Payments discounted by 3%, plus interest at the lower of 1.5% per month or the highest rate permitted by applicable law on any amount due Us from the date any such amount is due until the date actually paid Us in cash. We can also pursue any of the remedies available to Us under the UCC or any other law. In addition, You agree to pay Our reasonable attorneys' fees and actual costs including repossession, refurbishing the Collateral and collection costs, and all non-sufficient funds charges and similar charges and deliver the Collateral (at Your expense) to a location designated by Us.

12. **Late Charge:** If You fail to pay any sum due under this CFA within ten (10) days after its due date ("Late Payment"), You agree to pay Us a late charge (as reasonable liquidated damages and not as a penalty) equal to the lesser of (a) the greater of $50.00 or 10% of the late installment Payment or (b) the maximum amount permitted by applicable law ("Late Charge"). If any check or electronic funds transfer request for any payment is returned to Us unpaid, You shall pay Us a service charge of $55 for each such returned check or electronic funds request.

13. **Assignment, Inspection:** YOU HAVE NO RIGHT TO SELL, TRANSFER, SUBLEASE, ASSIGN THIS AGREEMENT OR ENCUMBER THE COLLATERAL OR THIS AGREEMENT UNTIL YOU HAVE SATISFIED ALL OF THE TERMS OF THIS AGREEMENT. We may sell, transfer, assign, or encumber this CFA. You agree that if We sell, transfer, assign, or encumber this CFA, the assignee will have the rights and benefits that We assign to the assignee and will not have to perform any of Our obligations. You agree that the rights of the assignee will not be subject to any claims, defenses or set-offs that You may have against Us. We and Our agents and representatives shall have the right at any time during regular business hours to inspect the Collateral and for that purpose to have access to the location of the Collateral.

14. **Loss Risk:** You hereby assume and shall bear the entire risk of loss, theft, damage and destruction of the Collateral from any cause whatsoever and no loss, theft, damage or destruction of the Collateral shall relieve You of the obligation to make scheduled Payments or any other obligation under this CFA, and this CFA shall remain in full force and effect except as provided below. You shall promptly notify Us in writing of such loss, theft, damage or destruction. If damage of any kind occurs to any item of Collateral, You, at Our option, shall at Your expense (a) place the item in good repair, condition or working order, or (b) if the Collateral cannot be repaired or is lost, stolen or suffers a constructive loss under the policy covering the Collateral, pay to Us the amount set forth herein for early-term Prepayment.

15. **Consent to Jurisdiction; Venue:** You hereby consent to the jurisdiction of any local, state, or federal court located within the State of Illinois and waive any objection based on improper venue or forum non conveniens to the conduct of any action or proceeding in any such court and consent that all service of process may be made by mail or messenger directed to You at the address above and that service so made shall be deemed to be completed upon the earlier of actual receipt or 3 days after the such mailing or delivery to a messenger.

16. **GOVERNING LAW:** THE AGREEMENT SHALL BE CONSTRUED IN ALL RESPECTS IN ACCORDANCE WITH, AND GOVERNED BY THE INTERNAL LAWS (AS OPPOSED TO THE CONFLICTS OF LAW PROVISIONS) OF THE STATE OF ILLINOIS, EXCEPT THAT QUESTIONS AS TO PERFECTION OF OUR SECURITY INTEREST AND THE EFFECT OF PERFECTION OR NON-PERFECTION SHALL BE GOVERNED BY THE LAW WHICH WOULD BE APPLICABLE EXCEPT FOR THIS SECTION.

17. **JURY WAIVER:** TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HERETO EACH WAIVE ANY RIGHT TO A TRIAL BY JURY ON ANY CLAIM, DEMAND, ACTION, CAUSE OF ACTION OR COUNTERCLAIM ARISING UNDER OR IN ANY WAY RELATED TO THE AGREEMENT, AND UNDER ANY THEORY OF LAW OR EQUITY, WHETHER NOW EXISTING OR HEREAFTER ARISING.

18. **Electronic Payment:** By completing the information below, You hereby authorize and request Us to initiate scheduled or periodic electronic fund transfer debits (and credit entries and adjustments for any debit entries in error) or affect a charge by any other commercially accepted practice to the account indicated below in the financial institution named below. You hereby authorize and request said financial institution to honor the debit and/or credit entries initiated by Us. This authorization is for installment Payments and any open charges, including but not limited to late charges, NFS charges, insurance charges, or any charges related to title or taxes due and outstanding under this CFA. This authority is to remain in force until such time as all amounts due are paid in full or until We and financial institution have received written notification from You terminating this authorization in such time and manner as to afford Us and financial institution a reasonable opportunity to act on it.

| | If the box is checked, You are required to make Your payments via Electronic Payment as a condition of this CFA. PLEASE PROVIDE US WITH YOUR BANK OR SAVINGS INSTITUTION'S INFORMATION REQUESTED BELOW OR ATTACH A VOIDED CHECK. | | |
|---|---|---|---|
| X | | | |
| Name of Account Holder: | | ☐ Business Account<br>☐ Personal Account | ☐ Checking Account<br>☐ Savings Account |
| Bank Name and Branch: | | Account Number: | |
| Address (city & state): | | | |
| Telephone Number: | | Routing Number: | |

19. **Limitation of Remedies and Damages:** You agree that in the event there is any dispute relating to or arising in connection with the CFA, that You shall not be entitled to punitive or consequential damages in connection with any action arising under or in any way related to the CFA.

20. **Notices.** The parties to this CFA agree that any notices shall be in writing and delivered by US mail, certified mail or overnight mail to Buyer's address as set forth above and to Creditor's address as set forth below the signature lines of this CFA, or at such other address designated by either party in writing.

21. **Miscellaneous:** You hereby acknowledge that You have authorized the Dealer, Us and Our designees to investigate Your creditworthiness and credit capacity in connection with the establishment, maintenance and collection of Your account and to furnish information concerning Your account, including insurance information to credit reporting agencies and others who may lawfully receive such information. During the term of this CFA, You agree to provide Us with all financial statements and copies of federal or state tax returns as We may reasonably request. You agree that any delay or failure to enforce Our rights under this CFA does not prevent Us from enforcing any rights at a later time. You agree that the terms and conditions reflected in this CFA or any attachments hereto are a complete and exclusive statement of Our CFA. Notwithstanding the foregoing, to the extent there are errors or omissions in the information contained in this CFA or any attachment to this CFA, We may by written notice to You correct such errors or omissions. You agree that this CFA will be binding upon Your successors, assigns, heirs and legal representatives. You agree that Our waiver of any provision hereunder shall not constitute a waiver of any other matter. It is the express intent of the parties not to violate any applicable usury laws or to exceed the maximum amount of interest permitted to be charged or collected by applicable law, and any such excess payment will be applied to the payments in inverse order of maturity, and any remaining excess will be refunded to You. You authorize Us to contact You via Your home or business telephone number, e-mail, cell phone or fax number. You authorize Us, at our discretion, to install, at Your expense, a tracking device in the Equipment so that we may monitor the Equipment and in the event of default secure the Equipment. If any provision hereof or any remedy herein provided is found to be invalid under any applicable law, such provision shall be inapplicable and deemed omitted, but the remaining provisions hereof, including remaining default remedies, shall be given effect in accordance with the manifest intent hereof, but the remaining provisions will not be effective against either party if they unilaterally materially and adversely change the economic benefits of this CFA to that party.

22. **Irrevocable Limited Power of Attorney:** You hereby irrevocably appoint Us and/or its assigns the true and lawful Attorney-in-Fact coupled with an interest with full authority and power to do and perform all and every act and thing whatsoever requisite and necessary to be done in the premises, as fully, to all intent and purposes as You might or could do if personally present, with full power of substitution and revocation, to complete, sign, execute, file and deliver any title, Collateral registration or certificate of ownership, UCC financing statement(s), and to sell, record interest, transfer or otherwise dispose of the Collateral. We and/or Our assigns may apply the proceeds from any such sale or other disposition against any and all of Your obligations to Us and/or Our assigns. If Your signature on any financing statement is required by law, You shall execute such supplemental instruments and financing statements We deem to be necessary and advisable and shall otherwise cooperate to defend Our interest in the Collateral by filing or otherwise. You also agree to pay Us on demand filing, registration and releasing fees prescribed by the UCC or other law. Further, to the extent insurance premium(s) is/are financed hereunder, and in the event of a default under this CFA, You irrevocably appoint Us as Attorney-in-Fact, with full authority to (a) cancel any insurance policy(ies) in accordance with the provisions herein, (b) receive all refunds, rebates or sums due under said policy(ies) and (c) execute and deliver on Your behalf all documents, forms and notices relating to the insurance policy(ies) hereunder.

YOU ACKNOWLEDGE THAT YOU HAVE READ AND ACCEPT THE TERMS OF THIS AGREEMENT, AMENDMENT, EXHIBIT, RIDER, AND SCHEDULE. FURTHER, YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED AND ACCEPTED THE COLLATERAL AND REQUEST THAT WE ACCEPT THIS AGREEMENT AND PAY THE DEALER FOR SAID COLLATERAL. THIS AGREEMENT SHALL NOT BE A VALID CONTRACT UNTIL ACCEPTED BY CREDITOR. BUYER(S) HEREBY WAIVES NOTICE BY CREDITOR OF ITS ACCEPTANCE OF THIS AGREEMENT.

BUYER: DAVID DARNELL BRITT d/b/a BRITT PRO
(PLEASE SIGN USING BLUE INK)
Signature: X _[signed]_
Print Name: DAVID DARNELL BRITT
Print Title: OWNER\OPERATOR
Cell Phone No.: 469-261-4114
Email Address: davidbrittpro@gmail.com
Billing Address: 506 Colgate Dr. Allen TX 75013

BUYER: PANDORA HENDERSON BRITT
(PLEASE SIGN USING BLUE INK)
Signature: X _[signed] P Britt_
Print Name: PANDORA HENDERSON BRITT
Print Title: OWNER\OPERATOR
Cell Phone No.: 469-261-3275
Email Address: phbritt@comcast.net
Billing Address: 506 Colgate Dr. Allen TX 75013

AGREED TO AND ACCEPTED:
ENGS COMMERCIAL FINANCE CO. ("CREDITOR")
By: _[signed]_
Print Name: Rose Reynolds
Title: Vice President - Operations

Address for Notice:
P.O. Box 4062
Lisle, Illinois 60532-9062

[Voided check image]

38460 1 54818 (01/28/2015 -74211.14)
CFA – Rev 08-14

Page 4 of 4



commercial finance

March 23, 2015

DAVID DARNELL BRITT
dba BRITT PRO
506 COLGATE DR
ALLEN, TX 75013
PANDORA HENDERSON BRITT
dba BRITT PRO
506 COLGATE DR
ALLEN, TX 75013

Re: **DAVID DARNELL BRITT  dba BRITT PRO – Contract # 54818**
Correction Amendment ("Amendment")

Dear DAVID:

In reviewing your Commercial Finance Agreement ("Agreement") with Engs Commercial Finance Co. ("CREDITOR") with a Contract Date of 01/28/2015, CREDITOR has identified inadvertent or typographical error(s) in one of the following sections ☐ CONTRACT #; ☐ CONTRACT DATE; ☐ BUYER'S ADDRESS; ☐ DEALER; ☐ VEHICLE\EQUIPMENT DESCRIPTION; ☐ PAYMENT SCHEDULE; ☐ ITEMIZATION OF PURCHASE PRICE (DOWN PAYMENT; ADDITIONAL FEES, CHARGES, TAXES, AND PREMIUMS INCLUDED IN THE AMOUNT FINANCED) and\or ☒ NEXT INVOICE DUE DATE AND INSTALLMENT PAYMENT AMOUNT) and wishes to correct your Agreement. Therefore, the section(s) identified above by a ☒ under Your Agreement will be deleted in its\their entirety and replaced with the following:

## COMMERCIAL FINANCE AGREEMENT

| "CREDITOR": ENGS COMMERCIAL FINANCE CO. ♦ 2441 Warrenville Road, Suite 310 Lisle, Illinois 60532 ♦ Telephone: (800) 680-3002 ♦ Fax: (800) 680-3002 | CONTRACT#: 54818 |
|---|---|
| | Contract Date: 01/28/2015 |

| "BUYER": DAVID DARNELL BRITT dba BRITT PRO 506 COLGATE DR ALLEN, TX 75013 (469) 675-3368   (469) 261-4114 DAVIDBRITTPRO@GMAIL.COM  PANDORA HENDERSON BRITT  dba BRITT PRO 506 COLGATE DR ALLEN, TX 75013 (469) 261-4114   (469) 675-3368 PHBRITT@COMCAST.COM | "DEALER": TEXAS KENWORTH CO. dba MHC KENWORTH Contact: SARAH PAYNE 34661 LBJ FREEWAY DALLAS, TX 75241 (972) 225-3600 |

Vehicle/Equipment Description (Include Quantity, Year, Make, Model and Serial No. and/or VIN No.) together with any accessories or attachments described below and/or listed on an attached Schedule or Invoice (hereinafter referred to as "Collateral":   (Include Quantity, Year, Make, Model and Serial No. and/or VIN No.)

| Description | Serial #/VIN |
|---|---|
| 2013 PETERBILT 388 TRACTOR  (Used) | 1XPHD49XXDD156042 |

Collateral Location (If different than above): Same as primary customer location above

| PAYMENT SCHEDULE NUMBER & AMOUNT OF INSTALLMENT PAYMENTS ("Term") | 54 MONTH TERM 54 @ $1,885.74 |
|---|---|

### ITEMIZATION OF PURCHASE PRICE

| SALE PRICE (combined price of each unit as itemized on Your invoice(s) submitted for financing, including: F.E.T, Sales Tax, any cost for accessories, attachments, fees, license, title or registration fees, premiums, protection plans or service contracts, services and/or additional charges reflected below): | $90,855.95 |
|---|---|
| DOWN PAYMENT | |
| TOTAL NET TRADE-IN: 2006 ISUZU NPR VIN# JALB4B16367008927 | $11,000.00 |
| CASH DOWN PAYMENT: | $7,171.19 |
| TOTAL DOWN PAYMENT (due at the time of execution): | $18,171.19 |

Page 1 of 2

♦ 2441 Warrenville Road, Suite 310 Lisle, Illinois 60532
♦ Telephone: (800) 680-3002  ♦ Fax: (800) 680-3002

| ADDITIONAL FEES, CHARGES, TAXES, AND PREMIUMS INCLUDED IN THE AMOUNT FINANCED: | | |
|---|---|---|
| DOCUMENTATION FEE FINANCED: | $595.00 | |
| INTERIM CHARGE FINANCED: | $931.38 | |
| GAP COVERAGE FINANCED: | $0.00 | |
| INSURANCE PREMIUM-Physical Damage FINANCED: | $0.00 | |
| LIFE/DISABILITY FINANCED: | $0.00 | |
| MISC. FEES: Financed Documentation Fee | $0.00 | |
| SALES TAX/DMV FEES FINANCE (OUT OF STATE TRANSACTION) | $0.00 | |
| TOTAL FEES FINANCED: | $1,526.38 | |
| TOTAL AMOUNT FINANCED: | | $74,211.14 |
| MONTHLY INVOICE FEE (waived for electronic payment): | $10.00 | |
| ADDITIONAL FEES, CHARGES, TAXES DUE AT SIGNING | | |
| DOCUMENTATION FEE UPFRONT: | $0.00 | |
| 0    ADVANCE PAYMENT(S): | $0.00 | |
| TOTAL DUE AT SIGNING: | | $0.00 |
| INVOICE DUE DATE AND INSTALLMENT PAYMENT AMOUNT | | |
| NEXT INVOICE DUE DATE: 04/15/2015 | AMOUNT DUE ON YOUR INVOICE: | $1,885.74 |

The modification(s) identified above is\are hereby incorporated into and made a part of Your Agreement or any ancillary schedule or addendum. Except as specifically modified hereby, the terms and conditions of Your Agreement shall remain in full force and effect. Unless otherwise specified herein, all of the terms used in this Amendment shall have the same meaning as set forth in Your Agreement. To the extent any terms or conditions of this Amendment conflict or are inconsistent with the terms and conditions of Your Agreement, the terms and conditions of this Amendment shall prevail.

Should you have any objection to this change, please contact me immediately at telephone number or address listed below.

Very truly yours,

Tracy Howell

Upon sale of this vehicle, the purchaser must apply for a new title within 30 days unless the vehicle is purchased by a dealer. Until a new title is issued, the vehicle record will continue to reflect the owner's name listed on the current title. SEE BACK OF TAB FOR ADDITIONAL INFORMATION.

1044 of 16832

ENGS COMMERCIAL FINANCE CO.
PO BOX 4062
LISLE, IL 60532-9062

002588

▼ DETACH HERE ▼

## TEXAS CERTIFICATE OF TITLE

54818  121076055

TEXAS DEPARTMENT OF MOTOR VEHICLES

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE OF VEHICLE | BODY STYLE |
|---|---|---|---|
| 1XPHD49XXDD156042 | 2013 | PTRB | TR |

TITLE/DOCUMENT NUMBER: 05740942071101444
DATE TITLE ISSUED: 03/17/2015

| MODEL | MFG. CAPACITY IN TONS | WEIGHT | LICENSE NUMBER |
|---|---|---|---|
| 386 | | 18700 | TONLY03 |

PREVIOUS OWNER: MHC KENWORTH

ODOMETER READING: EXEMPT

OWNER:
DAVID BRITT  PANDORA BRITT
DBA BRITT PROFESSIONALS
506 COLGATE DRIVE
ALLEN, TX 75801

REMARK(S): DIESEL

X _____
SIGNATURE OF OWNER OR AGENT MUST BE IN INK

UNLESS OTHERWISE AUTHORIZED BY LAW, IT IS A VIOLATION OF STATE LAW TO SIGN THE NAME OF ANOTHER PERSON ON A CERTIFICATE OF TITLE OR OTHERWISE GIVE FALSE INFORMATION ON A CERTIFICATE OF TITLE.

DATE OF LIEN: 03/03/2015    1ST LIENHOLDER: ENGS COMMERCIAL FINANCE CO.
PO BOX 4062
LISLE, IL 60532

1ST LIEN RELEASED _____ DATE _____
BY _____ AUTHORIZED AGENT

DATE OF LIEN: _____    2ND LIENHOLDER: _____

2ND LIEN RELEASED _____ DATE _____
BY _____ AUTHORIZED AGENT

DATE OF LIEN: _____    3RD LIENHOLDER: _____

3RD LIEN RELEASED _____ DATE _____
BY _____ AUTHORIZED AGENT

IT IS HEREBY CERTIFIED THAT THE PERSON HEREIN NAMED IS THE OWNER OF THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIENS.

RIGHTS OF SURVIVORSHIP AGREEMENT
WE, THE MARRIED PERSONS WHOSE SIGNATURES APPEAR HEREIN, HEREBY AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THIS CERTIFICATE OF TITLE SHALL FROM THIS DAY FORWARD BE HELD JOINTLY, AND IN THE EVENT OF DEATH OF ANY OF THE PERSONS NAMED IN THE AGREEMENT, THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR(S).

SIGNATURE _____ DATE _____
SIGNATURE _____ DATE _____
SIGNATURE _____ DATE _____

FORM 30-C REV. 01/2012    DO NOT ACCEPT TITLE SHOWING ERASURE, ALTERATION, OR MUTILATION.